IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

11843 HANNIBAL STREET, COMMERCE CITY, CO;
7361 MAD RIVER ROAD, MAD RIVER, CA;
2001 FORD F-250 XL, VIN #1FTNW21F01EA67656;
2000 VOLVO S80-16, VIN #YV1TS90DXY1094497;
$10,315.00 IN UNITED STATES CURRENCY;
$6,934.00 IN UNITED STATES CURRENCY;
$4,130.00 IN UNITED STATES CURRENCY;
$3,967.00 IN UNITED STATES CURRENCY;
$1,091.00 IN UNITED STATES CURRENCY;
$30,947.50 SEIZED FROM E-TRADE ACCT. XXXXXX8410;
$30,007.82 SEIZED FROM US BANK ACCT. XXXXXXXX1124;
$25,629.65 SEIZED FROM JP MORGAN CHASE BANK ACCT. XXXXXXX6097;
$19,680.12 SEIZED FROM FIRST BANK ACCT XXXXXX1991;
$16,019.66 SEIZED FROM CORE FIRST BANK & TRUST XXX7692;
$10,572.89 SEIZED FROM US BANK ACCT XXXXXXXX0439;
$6,200.50 SEIZED FROM EDWARD JONES ACCT XXXX4700-1-0;
$5,899.72 SEIZED FROM US BANK ACCT XXXXXXXX6172;
$5,666.93 SEIZED FROM US BANK ACCT XXXXXXXX0698;
$2,937.27 SEIZED FROM BELLCO CREDIT UNION ACCT XXXXX7138;
$1,125.31 SEIZED FROM BELLCO CREDIT UNION ACCT XXXXX7229;
$15,232.74 SEIZED FROM TCF NATIONAL BANK ACCT XXXXXX6528;
$5,525.59 SEIZED FROM PUBLIC SERVICE CREDIT UNION ACCT XXXXX9267;
ROLEX EXPLORER II WATCH;
TAG HEUER AQUARACER LADIES WATCH;
ROLEX SUB MARINER WATCH SEIZED FROM CHASE SAFE DEPOSIT BOX 6062-8;
$6,195.00 IN UNITED STATES CURRENCY;
$2,068.00 IN UNITED STATES CURRENCY;
$450.00 IN UNITED STATES CURRENCY;
LG 60" PLASMA TELEVISION, SERIAL #907RMAQ153088;
$2,994.00 IN UNITED STATES CURRENCY;
SEVENTEEN SILVER BARS AND NINE SILVER COINS;
EIGHT MISCELLANEOUS GOLD COINS AND ONE GOLD BAR;
FIFTY ONE-DOLLAR COINS;

$11,019.88 SEIZED FROM PUBLIC SERVICE CREDIT UNION ACCT XXXXXX3027;
$10,996.76 SEIZED FROM JP MORGAN CHASE BANK ACCT XXXXX0604;
$5,610.15 SEIZED FROM JP MORGAN CHASE BANK ACCT XXXXX2438;
$2,280.00 IN UNITED STATES CURRENCY;
GOLD AND DIAMOND BRACELET;
2007 TOYOTA TUNDRA SR5, VIN #5TFBV54137X024482;
$5,560.00 IN UNITED STATES CURRENCY;
$760.00 IN UNITED STATES CURRENCY;
SIX SILVER BARS;
$1,988.00 IN UNITED STATES CURRENCY;
$7,910.00 IN UNITED STATES CURRENCY; and
$6,500.00 SEIZED FROM US BANK SAFE DEPOSIT BOX 1794-1;

      Defendants.

_____

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

_____

The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

## <u>JURISDICTION AND VENUE</u>

1.    The United States of America (the United States) has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property based on violations of the narcotics provisions of 21 U.S.C. §§ 801 <u>et seq.</u>  This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2.    Venue is proper under 21 U.S.C. § 881(j), and 28 U.S.C. § 1395, as defendant property is located, and some of the acts described herein occurred, in the District of Colorado.

**DEFENDANT PROPERTY**

3.     Defendant property is more fully described as:

a.     11843 Hannibal Street, Commerce City, Colorado 80022 ("defendant Hannibal Street"), which is more fully described as:

LOT 11, BLOCK 2, THE VILLAGES AT BUFFALO RUN EAST, FILING NO. 1, COUNTY OF ADAMS, STATE OF COLORADO.

Upon information and belief, defendant Hannibal Street is titled in the name of Drew Jeffrey and Christina McCarthy, and is encumbered by a Deed of Trust in the principal amount of $250,443.18 for the benefit of Countrywide Home Loans.

b.     7361 Mad River Road, Mad River, California 95552 ("defendant Mad River Road"), which is more fully described as:

THAT REAL PROPERTY SITUATED IN THE COUNTY OF TRINITY, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

ALL THAT PORTION OF THE WEST HALF OF THE NORTHEAST QUARTER AND THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 1 SOUTH, RANGE 7 EAST, H.B. & M., ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

PARCEL NO. 2 AS SHOWN ON THE PARCEL MAP FOR LOWELL E. STONE, FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER OF TRINITY COUNTY, CALIFORNIA ON MARCH 3, 1977 IN BOOK 9 OF MAPS AND SURVEYS AT PAGES 158 THROUGH 160. EXCEPTING THEREFROM THE NORTHERLY PORTION OF SAID PARCEL NO. 2 DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WEST LINE OF SAID PARCEL NO. 2 AT THE SOUTHERLY TERMINUS OF THE COURSE LABELED NORTH 20°33'45" EAST 325.00 FEET; THENCE ALONG SAID WEST LINE, NORTH 20°33'45" WEST 325.00 FEET; THENCE NORTH 43°10'45" WEST, 122.81 FEET; THENCE SOUTH 79°54'45" WEST 36.40 FEET; THENCE NORTH 60°01'45" WEST, 122.22 FEET TO THE NORTHWEST CORNER OF SAID PARCEL NO. 2; THENCE ALONG THE NORTH LINE

3

OF SAID PARCEL NO. 2, NORTH 76°10'53" EAST, 156.22 FEET; THENCE NORTH 71°35'19" EAST 367.99 FEET TO THE NORTHEAST CORNER OF SAID PARCEL NO. 2; THENCE ALONG THE EAST LINE OF SAID PARCEL NO. 2, SOUTH 1°23'36" WEST, 330.74 FEET TO THE NORTHEAST 1/16TH CORNER; THENCE CONTINUING ALONG SAID EAST LINE SOUTH 1°25'32" WEST, 275.15 FEET MORE OR LESS TO A POINT ON SAID LINE
BEARING SOUTH 88°34'28" EAST FROM THE POINT OF BEGINNING; THENCE NORTH 88°34'28" WEST, 146.11 FEET MORE OR LESS TO THE POINT OF BEGINNING.

PURSUANT TO LOT LINE ADJUSTMENT #P-09-14
TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE EXISTING ROAD LEADING FROM THE LAND HEREIN DESCRIBED TO THE COUNTY ROAD, AS DESCRIBED IN THE DEED RECORDED NOVEMBER 1, 1978 IN BOOK 195 OF OFFICIAL RECORDS PAGE 763, TRINITY COUNTY RECORDS.

Upon information and belief, defendant Mad River Drive is titled in the name of Big Foot Consulting, LLC, and is encumbered by a Deed of Trust in the principal amount of $70,000 for the benefit of Thomas H. Genter, Monta R. Genter, James Hendry, and Charleen Hendry.

c.      2001 Ford F-250 XL, VIN #1FTNW21F01EA67656, seized on January 25, 2012, from 11843 Hannibal Street, in Commerce City, Colorado ("defendant Ford F-250").   Upon information and belief, defendant Ford F-250 is registered in the name of Drew Wayne Jeffrey, and is unencumbered. Defendant Ford F-250 is currently being held by the U.S. Marshal in Denver, Colorado.

d.      2000 Volvo S80-16, VIN #YV1TS90DXY1094497, seized on January 25, 2012 from 11843 Hannibal Street in Commerce City, Colorado ("defendant Volvo").   Upon information and belief, defendant Volvo is registered in the name of Drew

Wayne Jeffrey, and is unencumbered.   Defendant Volvo is currently being held by the U.S. Marshal in Denver, Colorado.

e.     $10,315.00 in United States Currency, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant $10,315.00 in U.S. Currency").   Defendant $10,315.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

f.     $6,934.00 in United States Currency, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant $6,934.00 in U.S. Currency"). Defendant $6,934.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

g.     $4,130.00 in United States Currency, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant $4,130.00 in U.S. Currency").   Defendant $4,130.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

h.     $3,967.00 in United States Currency, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant $3,967.00 in U.S. Currency").   Defendant $3,967.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

i.     $1,091.00 in United States Currency, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant $1,091.00 in U.S. Currency").   Defendant $1,091.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

j.       $30,947.50 seized on January 26, 2012 from E-Trade account number xxxxxx8410 in the name of Drew Jeffrey ("defendant $30,947.50"). Defendant $30,947.50 is currently being held by the Internal Revenue Service in Denver, Colorado.

k.       $30,007.82 seized on January 25, 2012, from US Bank account number xxxxxxxx1124 in the name of Drew Jeffrey ("defendant $30,007.82"). Defendant $30,007.82 is currently being held by the Internal Revenue Service in Denver, Colorado.

l.       $25,629.65 seized on January 26, 2012, from JP Morgan Chase Bank account number xxxxxxx6097 in the name of Drew Jeffrey ("defendant $25,629.65").   Defendant $25,629.65 is currently being held by the Internal Revenue Service in Denver, Colorado.

m.       $19,680.12 seized on January 26, 2012, from FirstBank account number xxxxxx1991 in the name of Drew Jeffrey ("defendant $19,680.12"). Defendant $19,680.12 is currently being held by the Internal Revenue Service in Denver, Colorado.

n.       $16,019.66 seized on January 26, 2012, from Core First Bank & Trust account number xxx7692 in the name of Drew Jeffrey ("defendant $16,019.66"). Defendant $16,019.66 is currently being held by the Internal Revenue Service in Denver, Colorado.

o.       $10,572.89 seized on January 25, 2012, from USBank account number xxxxxxxx0439 in the name of Drew Jeffrey ("defendant $10,572.89"). Defendant $10,572.89 is currently being held by the Internal Revenue Service in Denver, Colorado.

p.      $6,200.50 seized on January 26, 2012, from Edward Jones account number xxxx4700-1-0 in the name of Drew Jeffrey ("defendant $6,200.50"). Defendant $6,200.50 is currently being held by the Internal Revenue Service in Denver, Colorado.

q.      $5,899.72 seized on January 25, 2012, from USBank account number xxxxxxxx6172 in the name of Drew Jeffrey ("defendant $5,899.72").   Defendant $5,899.72 is currently being held by the Internal Revenue Service in Denver, Colorado.

r.      $5,666.93 seized on January 25, 2012, from USBank account number xxxxxxxx0698 in the name of Drew Jeffrey ("defendant $5,666.93").   Defendant $5,666.93 is currently being held by the Internal Revenue Service in Denver, Colorado.

s.      $2,937.27 seized on January 26, 2012, from Bellco Credit Union account number xxxxx7138 in the name of Drew Jeffrey ("defendant $2,937.27"). Defendant $2,937.27 is currently being held by the Internal Revenue Service in Denver, Colorado.

t.      $1,125.31 seized on January 26, 2012, from Bellco Credit Union account number xxxxx7229 in the name of Drew Jeffrey ("defendant $1,125.31"). Defendant $1,125.31 is currently being held by the Internal Revenue Service in Denver, Colorado.

u.      $15,232.74 seized on January 27, 2012, from TCF National Bank account number xxxxxx6528 in the name of Bigfoot Consulting ("defendant $15,232.74"). Defendant $15,232.74 is currently being held by the Internal Revenue Service in Denver, Colorado.

v.      $5,525.59 seized on January 26, 2012, from Public Service Credit Union account number xxxxxx9267 in the name of Bigfoot Motorsports ("defendant $5,525.59").   Defendant $5,525.59 is currently being held by the Internal Revenue Service in Denver, Colorado.

w.      Rolex Explorer II Watch, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant Rolex Explorer Watch"). Defendant Rolex Explorer Watch is currently being held by the Internal Revenue Service in Denver, Colorado.

x.      Tag Heuer Aquaracer Ladies Watch, seized on January 25, 2012, from 11843 Hannibal Street in Commerce City, Colorado ("defendant Tag Heuer Watch"). Defendant Tag Heuer Watch is currently being held by the Internal Revenue Service in Denver, Colorado.

y.      Rolex Sub Mariner Watch, seized on January 26, 2012, from JP Morgan Chase Bank safe deposit box #6062-8 in the name of Drew Jeffrey ("defendant Rolex Sub Mariner Watch").   Defendant Rolex Sub Mariner Watch is currently being held by the Internal Revenue Service in Denver, Colorado.

z.      $6,195.00 in United States Currency, seized on January 25, 2012, from 7620 E. 130th Avenue, in Brighton, Colorado ("defendant $6,195.00 in U.S. Currency").   Defendant $6,195.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

aa.      $2,068.00 in United States Currency, seized on January 25, 2012, from 7620 E. 130th Avenue in Brighton, Colorado ("defendant $2,068.00 in U.S.

Currency"). Defendant $2,068.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

bb. $450.00 in United States Currency, seized on January 25, 2012, from 7620 E. 130th Avenue in Brighton, Colorado ("defendant $450.00 in U.S. Currency"). Defendant $450.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

cc. LG 60" Plasma Television, Serial #907RMAQ153088, seized on January 25, 2012, from 7620 E. 130th Avenue, in Thornton, Colorado ("defendant LG Plasma TV"). Defendant LG Plasma TV is currently being held by the U.S. Marshal in Denver, Colorado.

dd. $2,994.00 in United States Currency, seized on January 28, 2012, from storage locker #501 at 12045 Moline Street in Brighton, Colorado ("defendant $2,994.00 in U.S. Currency"). Defendant $2,994.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

ee. Seventeen Silver Bars and Nine Silver Coins, seized on January 25, 2012, from storage locker #501 at 12045 Moline Street in Brighton, Colorado ("defendant 17 Silver Bars & 9 Silver Coins"). Defendant 17 Silver Bars & 9 Silver Coins is currently being held by the Internal Revenue Service in Denver, Colorado.

ff. Eight Miscellaneous Gold Coins and One Gold Bar, seized on January 28, 2012, from storage locker #501 at 12045 Moline Street in Brighton, Colorado ("defendant Eight Miscellaneous Gold Coins and One Gold Bar"). Defendant Eight

Miscellaneous Gold Coins and One Gold Bar is currently being held by the Internal Revenue Service in Denver, Colorado.

gg.    Fifty One-Dollar Coins, seized on January 28, 2012, from storage locker #501 at 12045 Moline Street in Brighton, Colorado ("defendant 50 One-Dollar Coins").   Defendant 50 One-Dollar Coins is currently being held by the Internal Revenue Service in Denver, Colorado.

hh.    $11,019.88 seized on January 25, 2012, from Public Service Credit Union account number xxxxxx3027 in the name of Jordan Buehrer ("defendant $11,019.88").   Defendant $11,019.88 is currently being held by the Internal Revenue Service in Denver, Colorado.

ii.    $10,996.76 seized on January 25, 2012, from JP Morgan Chase Bank account number xxxxx0604 in the name of JGB Enterprises ("defendant $10,996.76").   Defendant $10,996.76 is currently being held by the Internal Revenue Service in Denver, Colorado.

jj.    $5,610.15 seized on January 25, 2012, from JP Morgan Chase Ban account number xxxxx2438 in the name of JGB Enterprises ("defendant $5,610.15"). Defendant $5,610.15 is currently being held by the Internal Revenue Service in Denver, Colorado.

kk.    $2,280.00 in United States Currency, seized on January 25, 2012, from 2849 Hazel Court in Denver, Colorado ("defendant $2,280.00 in U.S. Currency"). Defendant $2,280.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

ll.     Gold and Diamond Bracelet, seized on January 25, 2012, from 2849 Hazel Court in Denver, Colorado ("defendant Gold & Diamond Bracelet").   Defendant Gold & Diamond Bracelet is currently being held by the Internal Revenue Service in Denver, Colorado.

mm.     2007 Toyota Tundra SR5, VIN #5TFBV54137X024482, seized on January 25, 2012, from 6292 Barton Road, in Breckenridge, Colorado ("defendant Toyota Tundra").   Upon information and belied, defendant Toyota Tundra is titled in the name of Joanne S. Gleason, and is encumbered with a lien in the principal amount of $12,949.58, for the benefit of Toyota Motor Credit Corporation.   Defendant Toyota Tundra is currently being held by the U.S. Marshal in Denver, Colorado.

nn.     $5,560.00 in United States Currency, seized on January 25, 2012, from 8240 E. 145th Place, in Brighton, Colorado ("defendant $5,560.00 in U.S. Currency"). Defendant $5,560.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

oo.     $760.00 in United States Currency, seized on January 25, 2012, from 8240 E. 145th Place, in Brighton, Colorado ("defendant $760.00 in U.S. Currency"). Defendant $760.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

pp.     Six Silver Bars, seized on January 25, 2012, from 8240 E. 145th Place in Brighton, Colorado ("defendant Six Silver Bars").   Defendant Six Silver Bars is currently being held by the Internal Revenue Service in Denver, Colorado.

qq.    $1,988.00 in United States Currency, seized on January 25, 2012, from 2525 E. 104th Avenue, #313, in Thornton, Colorado ("defendant $1,988.00 in U.S. Currency").   Defendant $1,988.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

rr.    $7,910.00 in United States Currency, seized on January 25, 2012, from 3920 Sharilane Street, in Strasburg, Colorado ("defendant $7,910.00 in U.S. Currency"). Defendant $7,910.00 in U.S. Currency is currently being held by the Internal Revenue Service in Denver, Colorado.

ss.    $6,500.00 seized on January 25, 2012, from USBank safe deposit box #1794-1 in the name of Robert Gregg ("defendant $6,500.00").    Defendant $6,500.00 is currently being held by the Internal Revenue Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4.    Except as otherwise noted, all of the following facts and information have been discovered through my own investigation, and the observations and investigations of fellow law enforcement officers as reported to me.

## I. OVERVIEW OF CRIMINAL ACTIVITY

5.    In April 2011, North Metro Drug Task Force (NMDTF) of Denver, Colorado, initiated an investigation into the illegal drug trafficking activities of the Jordan BUEHRER Drug Trafficking Organization (BUEHRER DTO) in the north Denver, Colorado area.

6.    The investigation included, but was not limited to, the use of confidential sources (CS), surveillance, court-authorized intercepts of wire communications, court-authorized GPS tracking devices, and trash runs.   It revealed that Jordan

BUEHRER was operating a marijuana growing and distribution network in Adams County, Colorado with ties to marijuana distribution operations in Texas and New Jersey, and sources of supply in other states, including California.  The investigation also revealed that Jordan BUEHRER works with, and is assisted in the marijuana business by his girlfriend, Brittlee BARNES, Matthew ALDERMAN (the "money man," on title to several DTO real properties), Devin SUSSMAN (distributor/transporter), Eric GLEASON (distributor with ties to operations in New Jersey), Philip LOBO (distributor/transporter), Matthew McCALLY (grow caretaker), Mike ALBERTS (distributor), Joseph SMITH (grow caretaker), Daniel CICHOWSKI (grow caretaker), and others.

7.     Drew JEFFREY was identified as the primary source of supply for the BUEHRER DTO, and Robert GREGG was identified as the "middle man," who often brokered deals between Drew JEFFREY and Jordan BUEHRER.

8.     As the investigation progressed, members of the BUEHRER DTO, Drew JEFFREY, and Robert GREGG, were frequently intercepted using coded language such as "tickets", "units", "work", "paperwork", "paper" and "dough."   Law enforcement is aware that "tickets" and "units" are coded language often referring to pounds of marijuana; "work" refers to marijuana for sale; and "paper", "paperwork" or "dough," refers to payment for marijuana or the distribution thereof.

9.     Additionally, detectives learned that when referring to specific amounts of product and currency, the BUEHRER DTO used only a number to indicate the amount of product being distributed in pound quantities to avoid detection if conversations were overheard.   For instance, a reference to needing "10," would refer to ten pounds of

marijuana, and a reference to "ticket prices" being "22 or 23" would refer to a price of $2200 or $2300 per pound.

10.     During the course of this investigation, a Confidential Source (CS-1) told officers that the BUEHRER DTO utilizes several single family residences in the Denver metro area to grow, harvest, and processes high grade quality marijuana.   Law enforcement subsequently identified multiple single family residences, owned by members of the BUEHRER DTO, which contained active marijuana growing operations. CS-1 also advised that the BUEHRER DTO utilized vehicles equipped with hidden compartments to transport marijuana and illegal drug proceeds.   These vehicles were used to transport multi-pound quantities of high grade marijuana from Colorado to out of state locations.   The same vehicles were then used to transport drug proceeds back to Colorado, specifically to Jordan BUEHRER's residence.

11.     The investigation further revealed that the BUEHRER DTO had several business fronts that were being utilized to conceal or disguise the identity of the co-conspirators and ownership of the illegal drug proceeds.   These businesses include, but are not limited to Jordan BUEHRER's companies: Jordan's Enterprise, Inc., JGB Enterprises, LLC, and Elite Environmental Services, Inc. (EES); and Drew JEFFREY's companies: Bigfoot Consulting, LLC, and Bigfoot Motorsports, LLC.   The address listed for JGB Enterprises, LLC is Jordan BUEHRER's residence, 7620 E. 130th Avenue, Brighton, Colorado.   The addresses listed for the other companies are simply mail drop locations utilized by BUEHRER and JEFFREY.   During the course of the investigation,

Jordan BUEHRER and Drew JEFFREY were never observed conducting any legitimate business activity through these businesses.

## II. CONFIDENTIAL SOURCE

12.     In April 2011, NMDTF Detectives met with CS-1 and discussed the drug activities of Jordan BUEHRER, and his girlfriend Brittlee BARNES, who were making numerous trips to New Jersey and Texas to deliver large amounts of high grade marijuana.   CS-1 advised that the trips usually involved quantities of marijuana ranging from 10-20 pounds, with each pound selling for $3,800.00.   CS-1 indicated the loads of marijuana were transported in a white Chevrolet Trailblazer equipped with hidden compartments in the rear cargo area that are operated with two switches under the driver's side dashboard, and the center console.   The switches activate two hydraulic pumps that open or "butterfly" the compartments.   CS-1 also indicated the marijuana was double vacuum-bagged in an attempt to avoid detection from law enforcement.

13.     CS-1 indicated Jordan BUEHRER and several co-conspirators had numerous marijuana grows in residences throughout the Denver Metropolitan Area. CS-1 indicated Jordan BUEHRER did not have any of these homes in his name in an effort to not "lose everything" in the event he was caught by law enforcement.   CS-1 also indicated that Jordan BUEHRER was always trying to find individuals to hold money for him in the event his house was raided.   CS-1 estimated 200-300 pounds of marijuana were transported between CS-1 and Jordan BUEHRER in the past year.   CS-1 indicated Jordan BUEHRER and Brittlee BARNES currently live at 7620 East 130th Avenue, Thornton, Colorado.

14.     On December 27, 2011, CS-1 met with Jordan BUEHRER inside BUEHRER's 7620 East 130th Avenue residence and purchased one ounce of marijuana from BUEHRER.   During their meeting, which was recorded, BUEHRER discussed details of the DTO's ongoing distribution operations.

### III. TEXAS TRAVELS

15.     On May 3, 2011, detectives observed two white vehicles inside the garage at 7620 East 130th Avenue in Thornton, Colorado.   The two vehicles were observed through the garage windows.   CS-1 had indicated that Jordan BUEHRER and Brittlee BARNES had two vehicles, the aforementioned Chevrolet Trailblazer, registered to Brittlee BARNES, and a Dodge Ram 1500, registered to Jordan BUEHRER.   CS-1 stated that Jordan BUEHRER conducts all of his business, transports loads of marijuana, and visits and maintains marijuana grows while driving his white Dodge Ram pickup.

16.     On May 19, 2011, information was received that the white Chevrolet Trailblazer's vehicle plate was cleared at 9:00 a.m. in Salina, Kansas on May 17, 2011. It is unknown if a traffic stop was conducted, or if it was only a license plate clearance. This information is consistent with information received from CS-1 in reference to a load of marijuana that should have been shipped to Texas within the past two weeks.

17.     On May 26, 2011, NMDTF detectives installed a court-authorized GPS tracking unit on BUEHRER's white Chevrolet Trailblazer.   According to the tracker, on June 16, 2011, the Chevrolet Trailblazer left BUEHRER's residence at 7620 East 130th Avenue in Thornton, Colorado, and traveled to Russell, Kansas, where it stopped for 9 hours.   The vehicle left Russell, Kansas, the morning of June 17, 2011, traveling

16

southbound through the State of Oklahoma, and into the State of Texas.    At approximately 7:00 pm on June 17, 2011, the Chevrolet Trailblazer arrived at the residence of known drug-trafficker Justin HENDERSON, in Texarkana, Texas.    The Chevrolet Trailblazer remained at the residence for 2 hours and then travelled to a Hampton Inn in Paris, Texas, where it remained for nearly 10 hours before returning to Colorado.    A traffic stop was initiated near Watkins, Colorado, and it was confirmed that Jordan BUEHER and Brittlee BARNES were driving the vehicle.

18.    On the afternoon of July 21, 2011, the Chevrolet Trailblazer left Jordan BUEHRER's Thornton, Colorado residence, and traveled back to the residence of drug trafficker Justin HENDERSON in Texarkana, Texas.    Law enforcement observed BUEHRER's white Chevrolet Trailblazer in the driveway of Henderson's residence, and individuals unloading something out of the rear of the vehicle.

19.    On July 24, 2011, the Trailblazer left Texas, and traveled back to Colorado. At 11:41 p.m., the Trailblazer arrived at BUERHER's residence and pulled into the driveway.    NMDTF detectives observed Jordan BUEHRER and Brittlee BARNES exit the vehicle.    After tampering with the trunk area for a period of time, Jordan BUEHRER exited the rear passenger seat and walked to the driver's side of the vehicle.    BUEHRER returned and continued to tamper with the trunk area at which point he removed a small bag.    Based on information previously received from CS-1, the area the bag was retrieved from was used to transport narcotics and U.S. Currency.

## IV. SEPTEMBER 3, 2011 SEIZURE

20.     On September 3, 2011, Kansas State Patrol stopped the Trailblazer for a traffic violation.   The vehicle was being driven by an individual named Devin SUSSMAN. During the stop, officers searched the vehicle and found 20 pounds of high grade marijuana from inside a hidden compartment in the rear of the vehicle.   In addition to the marijuana, officers found indicia of Jordan BUERHER and Brittlee BARNES, including a recent motel receipt from McAlester, Oklahoma, for Jordan BUEHRER, another recent motel receipt from Russell, Kansas, for Jordan BUEHRER, Kaiser Permanente paperwork for Brittlee BARNES, for a recent medical appointment, and New Jersey title and registration documents.

21.     After his arrest, SUSSMAN spoke to narcotics detectives.   NMDTF detectives told SUSSMAN that there was 20 pounds of marijuana located inside the vehicle, to which SUSSMAN responded that he was "getting screwed" because there was only supposed to be 14 pounds, and he was getting paid $200.00 per pound. SUSSMAN was asked if the marijuana was his, and he indicated it was not.

22.     SUSSMAN said he was given a plane ticket by Eric GLEASON, to fly from Philadelphia, Pennsylvania, to Denver, Colorado on September 2, 2011.   GLEASON has been identified as a marijuana distributor in New Jersey, with ties to the BUEHRER DTO.   Prior to leaving Pennsylvania, Eric GLEASON provided SUSSMAN a phone number for Jordan BUEHRER to call once he arrived in Denver.   Upon arrival in Denver, he called Jordan BUEHRER so they could meet at the airport.   Jordan BUEHRER arrived at the airport driving his Dodge Ram 1500, which is consistent with the GPS

tracker information, and then drove SUSSMAN to his residence, 7620 E. 130th Avenue, in Thornton, Colorado, where SUSSMAN spent the night.   SUSSMAN also stated that Eric GLEASON gave him $9,600.00 to give to Jordan BUEHRER upon arrival in Denver. This money was supposed to assist with the purchase of a new vehicle to transport marijuana loads, preferably a Suburban or large vehicle with larger quarter panels.   Per SUSSMAN, the specific amount of $9,600.00 was given to avoid declaration procedures at the airport.

23.     SUSSMAN was asked where the marijuana was going, and SUSSMAN indicated it was going to either south New Jersey or Philadelphia.   He indicated he was going to meet Eric GLEASON upon his arrival, and that GLEASON would pay him $200 per pound of marijuana.

24.     SUSSMAN was asked what had occurred with the license plates on the Trailblazer that now bore New Jersey plates. SUSSMAN indicated the title was mailed overnight, to Eric GLEASON from Jordan BUEHRER, and that he (SUSSMAN) had re-titled and registered it in his mother's name so the insurance would be cheaper, and brought the plates with him to Denver. The New Jersey plates were affixed to the Trailblazer prior to SUSSMAN leaving BUEHRER's residence the following morning.

25.     SUSSMAN was asked about the activities at Jordan BUEHRER's house in Thornton, Colorado.   SUSSMAN indicated they had a large amount of marijuana at the residence, which they dried with fans in the kitchen.

## V. TRASH RUNS

26.     During this investigation, NMDTF detectives conducted several trash pick-ups at 7620 E. 130th Avenue, in Thornton, Colorado (Jordan BUEHRER's residence), and recovered evidence of a marijuana grow operation, including, but not limited to, vacuum sealed bags, marijuana buds and clippings, packaging materials, carbon paper, Express Mail packages and other indicia of marijuana growing.

27.     The Express Mail packages from US Postal Service envelopes show shipments from Egg Harbor Township, New Jersey, to Denver, Colorado.   A check of the postal receipts indicates Jordan BUEHRER received Express Mail envelopes at his Thornton residence, as well as his post office box belonging at the UPS Store located at 1550 Larimer Street, Box #517, in Denver, Colorado.

28.     The contents of the envelopes, based on packaging material found, including carbon paper, appeared to have been bundles of U.S. Currency.   Based on prior experience of the Postal Inspectors, it is a common occurrence for individuals to place U.S. Currency in carbon paper in an effort to thwart U.S. Postal x-ray equipment. There was also a U.S. postal receipt reference a 4 pound 7 ounce shipment to New Jersey.   Based on directions of travel for the packages it appears packages of marijuana were shipped to New Jersey and money packages were received in Colorado.

## VI. POSTAL INTERCEPTS

29.     On June 30, 2011, NMDTF detectives met United States Postal Inspector Brook Fuller regarding an intercepted envelope that was addressed to the P.O. Box

belonging to Jordan BUEHRER at 1550 Larimer Street #517 in Denver, Colorado.   The package had been sent from Eric GLEASON in New Jersey.

30.     Manipulation of the envelope felt as if it contained U.S. Currency.   Postal Inspector Fuller requested that Aurora Police K9 Officer Jim Gentry respond to the Costco in Arvada, Colorado with his K9 partner, where a sniff was completed on the envelope. The dog showed a positive alert to the presence of narcotics on the package.   The package was not opened, but was placed back into the mail for delivery to BUEHRER.

31.     On August 25, 2011, detectives observed the GPS tracker on BUEHRER's Chevrolet Trailblazer arrive at the U.S. Post Office, located at 12470 York Street in Thornton, Colorado.   Agents arrived at the Post Office and retrieved the packages, which were dropped off in the previous hour.   NMDTF detectives observed one package addressed to a New Jersey address from Elite Environmental Services (one of Jordan BUEHRER's fictitious companies) at 1550 Larimer Street #517 in Denver, Colorado. This address and company has been listed on additional packages that have been observed going to and from Jordan BUEHRER.

32.     Upon inspecting the package, NMDTF detectives observed the odor of marijuana emanating from the package.   The detectives requested Westminster Police Officer Ray Esslinger and K9 Rex respond to the location for a drug sniff of the package. K9 Rex showed a positive alert to the presence of narcotics in the box believed to contain marijuana.

33.     A postal employee positively identified Jordan BUEHRER as the individual who mailed the package.   Because of the existing investigation, the box was not opened, but was mailed to New Jersey.

34.     On November 9, 2011, Postal Inspector Steve Hodges intercepted a package addressed to Elite Environmental Serv at Jordan BUEHRER's 7620 East 130th Avenue, Thornton, Colorado residence, which had been sent from Eric Gleason in Absecon, New Jersey.   When opened pursuant to a federal search warrant, officers found four letter-sized envelopes containing a total of $9,600.00 in United States Currency.   The package was re-packed, and then delivered to BUEHRER's residence.

## VII. INTERCEPTED CALLS WITH MATTHEW ALDERMAN

35.     Matthew ALDERMAN has been identified as "the money man" for the BUEHRER DTO, responsible for owning numerous properties utilized and rented by members of the DTO, and acting as caretaker for the marijuana grows at these properties.   Some of the properties titled in ALDERMAN's name, include Jordan BUEHRER's current residence at 7629 E. 130th Avenue in Thornton, Colorado; BUEHRER's former residence at 11983 Elm Drive, in Thornton, Colorado; 2040 Tundra Circle in Erie, Colorado; and 14560 Lowell Boulevard in Broomfield, Colorado.

36.     On November 2, 2011, a telephone call was intercepted between Matthew ALDERMAN and Jordan BUEHRER discussing the cutting down of marijuana plants, rent, and ALDERMAN's split from the last harvest.

37.     On December 6, 2011, a telephone call was intercepted between Matthew ALDERMAN and Jordan BUEHRER discussing the Erie address (2040 Tundra Circle).

ALDERMAN asked BUEHRER to use the $CO_2$ generator, and said he had to get a regulator for it.   Your Affiant knows that marijuana cultivators often use $CO_2$ generators to enhance the air quality of the environment in which the marijuana plants grow.

38.     On December 9, 2011, a telephone call was intercepted between Matthew ALDERMAN and Jordan BUEHRER discussing $CO_2$ generators and materials for the Lowell address (14560 Lowell Blvd).

39.     On December 28, 2011, a telephone call was intercepted between Matthew ALDERMAN and Jordan BUEHRER discussing a fitting at the Erie address (2040 Tundra Circle) and saying that he was up there and saw two lights were on and there may be a timer issue.   Your Affiant knows that marijuana cultivators use lights and timers in indoor marijuana grow operations.

40.     On January 2, 2012, a telephone call was intercepted between Matthew ALDERMAN and Jordan BUEHRER discussing the $CO_2$ generator in the Erie address (2040 Tundra Circle) and it had been hooked up.   BUEHRER told ALDERMAN he would have money in the cabinet for ALDERMAN tomorrow and said that he was going to mail some things today.   Your affiant believes that BUEHRER was paying ALDERMAN his share of the marijuana harvest and mailing out a package containing marijuana.

## VIII. INTERCEPTED CALLS WITH ROBERT GREGG

41.     Robert GREGG has been identified as a "middleman" or "broker" of illegal marijuana sales between Jordan BUEHRER and co-conspirator Drew JEFFREY.

42.     During court-authorized interception of phones utilized by members of the BUEHRER DTO, detectives monitored numerous phone conversations and text

messages between Robert GREGG and Jordan BUEHRER reference marijuana cultivation issues.

43.   On October 17, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, in which GREGG told BUEHRER that he had a "ticket" for him (pound of marijuana).   He said it was a "nice ticket," and asked BUEHRER if he could help him out with it.   BUEHRER indicated that he could, and they could meet the following day.   The two discussed running loads to an unknown location, using other criminal associates to transport the loads, and obtaining a camping trailer to run the loads in.   In addition, BUEHRER and GREGG discussed putting in orders with "Big Brother" (Drew Jeffrey), and purchasing a truck and trailer to transport the marijuana.   They talked again later that day, and BUEHRER asked what the "ticket prices" are, to which GREGG indicated they were "22 or 23…..23 tops" ($2,200 or $2,300 per pound).

44.   On October 18, 2011, officers observed Robert GREGG and Jordan BUEHRER meet in the parking lot of a Black Eyed Pea Restaurant located at 211 West 104th Avenue in Northglenn, Colorado.   GREGG met with BUEHRER for a short time inside GREGG's vehicle, after which BUEHRER returned to his vehicle carrying a box. Following the transaction, NMDTF Detectives followed Robert GREGG to his residence located at 3263 West 29th Avenue in the City and County of Denver, Colorado.

45.   On October 22, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, in which BUEHRER stated he would have the "paperwork" for GREGG on Wednesday.   Your Affiant believes the "paperwork"

discussed in this conversation is payment for the pound of marijuana received on October 18, 2011 at the Black Eyed Pea restaurant in Northglenn, Colorado.

46.     On Wednesday, October 26, 2011, surveillance officers observed Robert GREGG meet with Jordan BUEHRER in the parking lot of a Best Buy located at 104 West 104th Avenue in Northglenn, Colorado.   GREGG stayed there for a short period of time and left the area.   Based on the aforementioned telephone calls, it is believed this was an exchange of money between BUEHRER and GREGG.

47.     On November 1, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, during which GREGG stated that he has an additional "ticket" for BUEHRER.   Robert GREGG asked Jordan BUEHRER how many tickets he would need from "Big Brother" (Drew JEFFREY).   Your affiant believes that GREGG is telling BUEHRER that he has an additional pound of marijuana for him and is asking BUEHRER how many pounds of marijuana that he will need from Drew JEFFREY.

48.     On November 2, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, during which GREGG indicated he has a friend who is a "commercial driver" that they can hire to help move loads for them.   Robert GREGG told Jordan BUEHRER that his friend also has a semi-truck that they can use.   Additionally, Robert GREGG told Jordan BUEHRER that he put in an order for "40 tickets," although they may need most of the "paperwork up front."   They decided to meet the following day and Robert GREGG would bring a "ticket" with him.

49.     On November 7, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER in which Robert GREGG told Jordan BUEHRER he

knows a truck driver who has a route that includes Philadelphia and New Jersey, and they agreed to meet on November 8, 2011.   During this investigation, New Jersey and Philadelphia had been identified as areas to which the BUEHRER DTO transports loads of marijuana.

50.    On November 14, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, in which GREGG told BUEHRER that he had access to "30 or 40 tickets."   Later the same day, another conversation is intercepted where Robert GREGG and Jordan BUEHRER discussed having issues with the "people from Philly" and Texas.   Your affiant knows that Jordan BUEHRER has a history of transporting loads of marijuana to New Jersey and Texas, and believes that GREGG had access to 30 or 40 pounds of marijuana.

51.    On November 27, 2011, a text message was sent from Robert GREGG to Jordan BUEHRER, "That cream caramel u like will be ready on tues, let me know." During this investigation, the cream caramel has been identified as a strain of marijuana.

52.    Between December 3 and 13, 2011, several phone calls between Robert GREGG and Jordan BUEHRER were intercepted, in which they discussed BUEHRER selling amounts of marijuana for GREGG.

53.    On December 21, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, where GREGG requested three ounces to fill a pound order (of marijuana).   GREGG and BUEHRER also discussed transporting a load (marijuana) soon.

54.     On December 27, 2011, a telephone call was intercepted between Robert GREGG and Jordan BUEHRER, where they discussed the shipping of marijuana out of state, in 5 gallon buckets.

## IX. INTERCEPTED CALLS WITH DREW JEFFREY

55.     Drew JEFFREY is a supplier of high grade marijuana from the "North Coast," which has been identified as Trinity County in California, a well-known area for marijuana cultivation.   JEFFREY has been identified as the main source of supply for the BUEHRER DTO.   He is associated with the residences at defendant Hannibal Street in Colorado and defendant Mad River Road in California.

56.     On November 10, 2011, a telephone call was intercepted between Jordan BUEHRER and Drew JEFFREY, in which JEFFREY told BUEHRER "let your contacts know, if they need some work, we got work and we're always available."   BUEHRER responded "Okay, um would your number still be the same?"   JEFFRERY responded "Yeah, no no no, we're coming in at 22-23 to you."   BUEHRER responded "Okay, um, they're just really trying, you know, they are just tryin' to dick me down at the last minute, an uh, I'm gonna see if I could work something out with them, if they could do it real quick, but otherwise they're asking for just too low you know."   Law enforcement believes that JEFFREY was going to sell marijuana to BUEHRER for $2,200 to $2,300 a pound, and in turn, BUEHRER was going to broker a marijuana deal to an unknown party.

57.     On December 24, 2011 through December 25, 2011, a series of text messages were sent back and forth between Robert GREGG and Drew JEFFREY, in

which GREGG requested to purchase three (3) pounds of marijuana and different strains of marijuana from JEFFREY.

58.     On January 3, 2012, a series of text messages were sent back and forth from Robert GREGG and Drew JEFFREY in which JEFFREY and GREGG discuss meeting up for the purchase of two to three pounds of marijuana.   Officers later observed Drew JEFFREY meeting with Robert GREGG at GREGG's 3263 W. 29th Avenue residence.   JEFFREY arrived in defendant Volvo, took a cardboard box out of the trunk, and carried it into the residence, then returned to defendant Hannibal Street.

59.     On January 7, 2012, a series of text messages were sent back and forth between Robert GREGG and Drew JEFFREY, in which GREGG asked JEFFREY if he had any pounds of marijuana available for sale.

60.     On January 9, 2012, a series of text messages were sent back and forth between Robert GREGG and Drew JEFFREY, during which JEFFREY asked GREGG to pay him his marijuana debt, and GREGG told JEFFREY that he would pay him "hopefully tomorrow."

## X. MARIJUANA GROW CARETAKERS

### A. Matthew MCCALLY

61.     Matthew McCally has been identified as one of the BUEHRER DTO's grow-house caretakers during numerous monitored telephone conversations with Jordan BUEHRER.   On October 10, 2011, Matthew MCCALLY told Jordan BUEHRER to bring "reapers" (tools used to manicure marijuana buds during harvest ) and a "washing machine" (used to make hashish from residual marijuana clippings ) when he came over

to the grow house located at 29855 East 166th Avenue in Brighton, Colorado (often referred to as "Bobs").  Following this phone call, officers observed BUEHRER's and MCCALLY's vehicles parked in the driveway of the aforementioned grow house.

62.     During a monitored conversation on November 20, 2011, Matthew MCCALLY told Jordan BUEHRER that he had cooked the marijuana at "Bobs," and that he was going to take it home and keep an eye on it.  Two days later, MCCALLY told BUEHRER that he was headed over to "Bobs" to clean up the grow.

63.     On November 29, 2011, officers intercepted a call in which Jordan BUEHRER told Matthew MCCALLY that he (BUEHRER) needed to pick up nine pounds of marijuana from MCCALLY's residence, 8240 East 145th Place, Thornton, Colorado. MCCALLY responded that Brooke MCCALLY (his wife) had it all locked up.   A short time later, BUEHRER was observed carrying a large box from MCCALLY's residence and placing into the bed of his truck before returning to his (BUEHRER) residence.

64.     During intercepted conversations on December 3, 2011, Jordan BUEHRER and Matthew MCCALLY discussed harvesting a grow at 170 West Midway Blvd. in Broomfield, Colorado in a few days.   On December 5, 2011, officers observed BUEHRER and MCCALLY unloading equipment into the West Midway residence, and the two remained at the location for several hours.   During subsequent intercepted phone calls, BUEHRER and MCCALLY discussed cleaning up the residence after the harvest, and then getting "babies" into the residence as soon as possible so they could start making money.

65.     During monitored conversations between December 23 and December 26, 2011, MCCALLY again discussed a recent marijuana harvest with Jordan BUEHRER that took place at "Bobs," 29855 East 166th Avenue in Thornton, Colorado, and MCCALLY told BUEHRER that he had cooked the marijuana, then took it home to watch it.

### B. Joseph SMITH

66.     Joseph SMITH has been identified as one of the BUEHRER DTO's grow-house caretakers.   During surveillance, officers observed SMITH meeting with Jordan BUEHRER and at three grow locations owned by target Matthew ALDERMAN. Through monitored telephone conversations, it was determined that SMITH assisted ALDERMAN with tending the DTO's grow operations.   On January 4, 2012, SMITH told Jordan BUEHRER that he had left money for BUEHRER in the "cabinet" from the 1 ¾ pound marijuana deal that occurred the previous day.   "The cabinet" had previously been identified through monitored telephone conversations as being inside ALDERMAN's 14560 Lowell Boulevard residence.

### C. Daniel CICHOWSKI

67.     Daniel CICHOWSKI has been identified through surveillance and monitored telephone conversations, as a caretaker of Jordan BUEHRER's grow operations at several locations, and as one of the DTO members who holds drug monies for BUEHRER.   On December 1, 2011, Jordan BUEHRER called Daniel CICHOWSKI and asked CICHOWSKI to count the money he had been given to make sure the count was right.   During this recorded conversation, CICHOWSKI was overheard counting out money, and then told BUEHRER that there was $7,500.   During other recorded

30

conversations, BUEHRER is heard ordering CICHOWSKI to do various tasks associated with the grow operations at BUEHRER's 7620 E. 130th Avenue residence in Thornton, Colorado, and at ALDERMAN's 2040 Tundra Circle residence in Erie, Colorado.

68.     During intercepted phone calls on December 12, 2011, officers heard Jordan BUEHRER discussing the marijuana harvest Daniel CICHOWSKI was doing at BUEHRER's 7620 East 130th Avenue, Thornton, Colorado residence.   Several hours later, BUEHRER called Brittlee Barnes and complained about the amount of time it was taking CICHOWSKI to do the job.

## XI. DISTRIBUTORS

### A. Philip LOBO

69.     Philip LOBO was identified through monitored phone conversations as a marijuana customer of Jordan BUEHRER, and distributor for the BUEHRER DTO.   On October 11, 2011, NMDTF detectives received information from the Iowa Highway Patrol regarding a traffic stop that occurred on September 21, 2011 on Interstate 80 in Dallas County, Iowa.   The occupants of the vehicle were identified as Teresa JAMES (Philip LOBO's girlfriend) and Robert LOBO (Philip LOBO's father).   Pursuant to a search of their vehicle and trailer, the Troopers discovered 100 pounds of high grade marijuana. Based on intercepted phone calls between Philip LOBO and Jordan BUEHRER, NMDTF detectives believe this marijuana had been purchased from the BUEHRER DTO.

70.     On January 2, 2012, officers observed Jordan BUEHRER and Philip LOBO conduct a marijuana deal in the parking lot of a Thornton, Colorado Walmart store.   As LOBO was being followed after the deal, he called BUEHRER and told him he needed

one more pound.   BUEHRER then met with LOBO a second time, in the parking lot of a Home Depot in Arvada, Colorado.   Subsequent phone conversations regarding monies owed by LOBO, indicated that this had been a seven-pound marijuana deal.

## B. Eric GLEASON

71.    Eric GLEASON has been identified as a marijuana customer of Jordan BUEHRER's, who then distributed to unknown individuals in Colorado and New Jersey. During intercepted phone conversations, BUEHRER and GLEASON discuss the delivery of marijuana, and the mailing of marijuana proceeds between Colorado and New Jersey.

72.    During a monitored call on November 29, 2011, GLEASON told BUEHRER that he was flying into Colorado, wanted to meet with BUEHRER.   GLEASON discussed picking up nine pounds of marijuana from BUEHRER, driving it to the mountains (GLEASON rents a property in Breckenridge, Colorado), and then mailing it from there. GLEASON then discussed having the money shipped to their post office boxes and BUEHRER's residence.   Later the same day, officers followed BUEHRER to a McDonalds located on 104th Avenue in Commerce City, Colorado.   There, he met with GLEASON, and a box was removed from BUEHRER's truck, and place into the bed of defendant Toyota Tundra.   GLEASON was followed to his rental, located at 6292 Barton Road in Breckenridge, Colorado.

73.    On December 9, 2011 and January 3, 2012, officers intercepted phone calls in which Eric GLEASON and Jordan BUEHRER discussed packages that GLEASON had shipped from his Breckenridge property, to BUEHRER, in Denver.   They further

discussed meeting in Denver for the purpose of GLEASON paying BUEHRER for past drug transactions.

## C. Michael ALBERT

74.     Through intercepted phone calls, Michael ALBERT had been identified as a target who was purchasing marijuana from Robert GREGG, which he then distributed to unknown traffickers.

75.     On December 13, 2011, officers intercepted phone conversations between Michael ALBERT and Robert GREGG, in which they discussed a deal for an unknown quantity of marijuana.   A short time later, officers observed ALBERT arriving at GREGG's residence, located at 3263 West 29th Avenue in Denver, Colorado.

76.     On January 13, 2012, a text message was sent to Robert GREGG from co-conspirator Michael ALBERT, which said, "Ok, he's gonna make a deposit into my account and let me know when it's good. Ok. I really wish you were NOT making me do this as I do not need to raise any flags."

77.     On January 20, 2011, a telephone call was intercepted between Robert GREGG and Michael ALBERT during which ALBERT stated he would have the person who needs one put the money in his account and he would then transfer the money to GREGG's account.   GREGG stated he would meet with ALBERT's business partner tomorrow, and that he wanted the paperwork instead, because the bank is watching his accounts.

## XII. SEARCH & SEIZURE WARRANTS

78.    Based in part on the facts contained herein, on January 25, 2012 and January 26, 2012, approximately 25 state search warrants were executed on residences of various members of the BUEHRER DTO, including defendant Hannibal Street. During these searches, over 2,700 live marijuana plants, 200 pounds of processed and packaged marijuana, fourteen vehicles, over $56,000.00 in United States Currency, and miscellaneous personal property was seized.   The results of some of these searches are as follows:

### A. Grow Houses

### 29855 East 166th Avenue, Brighton, Colorado

79.    Targets Matthew McCALLY and Brooke McCALLY own 29855 East 166th Avenue, which they utilize as a marijuana growing location.   Upon execution of the warrant, officers found 60 live marijuana plants, and 42 pounds of processed and packaged marijuana worth an approximate street value of $147,000 (at $3,500 per pound).

### 9644 Race Way, Thornton, Colorado

80.    9644 Race Way is another property utilized by targets Matthew McCALLY and Brooke McCALLY as a marijuana growing location.   Upon execution of the warrant, officers found 84 live marijuana plants, and 34.98 grams of processed marijuana.

### 14560 Lowell Boulevard, Broomfield, Colorado

81.    14560 Lowell Boulevard is owned by and utilized as a marijuana growing operation by target Matthew ALDERMAN.   Upon execution of the warrant, officers found

34

994 live marijuana plants, and 3.2 pounds of processed and packaged marijuana worth an approximate street value of $11,200 (at $3,500 per pound).

### 2040 Tundra Circle, Erie, Colorado

82.     2040 Tundra Circle is owned by and utilized as a marijuana growing operation by target Matthew ALDERMAN.   Upon execution of the warrant, officers found 143 live marijuana plants, and .10 pounds of processed marijuana worth an approximate street value of $350 (at $3,500 per pound).

### 11983 Elm Drive, Thornton, Colorado

83.     11983 Elm Drive is owned by and utilized as a marijuana growing operation by target Matthew ALDERMAN.   Upon execution of the warrant, officers found 131 live marijuana plants, and 8.45 pounds of processed marijuana worth an approximate street value of $29,575 (at $3,500 per pound).

### 594 Branding Iron Court, Brighton, Colorado

84.     594 Branding Iron Court is the residence of target Philip LOBO.  Upon execution of the warrant, officers found 91 live marijuana plants, and 164.23 grams of processed marijuana.

### 170 West Midway Boulevard, Broomfield, Colorado

85.     170 West Midway Boulevard is owned and operated as a marijuana growing operation by target Robert GREGG.   Upon execution of the warrant, officers found 168 live marijuana plants.

### 3263 West 29th Avenue, Denver, Colorado

86.     3263 West 29th Avenue is also owned and operated as a marijuana growing operation by target Robert GREGG.   Upon execution of the warrant, officers found 75 live marijuana plants, and 324.5 grams of processed marijuana.

### 4726 Red Deer Trail, Broomfield, Colorado

87.     Targets Jordan BUEHRER and Brittlee BARNES also own 4726 Red Deer Trail, which they utilized for a marijuana growing operation.   Upon execution of the warrant, officers found 120 live marijuana plants.

### 2849 Hazel Court, Denver, Colorado

88.     2849 Hazel Court is the residence of Michael ALBERT.   Upon execution of the warrant, officers found 43 live marijuana plants, 16.45 pounds of processed and packaged marijuana worth an approximate street value of $57,575 (at $3,500 per pound), and a small amount of methamphetamine.   In addition, officers seized defendant $2,280.00 in U.S. Currency and defendant Gold & Diamond Bracelet.

### 6292 Barton Road, Breckenridge, Colorado

89.     6292 Barton Road is the Colorado residence of target Eric GLEASON. Upon execution of the warrant, officers found 23 live marijuana plants, 18.59 pounds of processed and packaged marijuana worth an approximate street value of $65,065 (at $3,500 per pound).   In addition, officers seized defendant Toyota Tundra from this location.

### 7620 East 130th Avenue, Thornton, Colorado

90.     7620 East 130th Avenue is the residence of targets Jordan BUEHRER and his wife, Brittlee BARNES.   Upon execution of the warrant, officers found 240 live marijuana plants, and 1.4 pounds of processed and packaged marijuana with an approximate street value of $4,900 (at $3,500 per pound).   In addition to the drugs, officers found and seized defendant $6,195.00 in U.S. Currency, defendant $2,068.00 in U.S. Currency, defendant $450.00 in U.S. Currency, and defendant LG Plasma TV.   This residence is titled to co-conspirator Matthew ALDERMAN.

### Defendant 11843 Hannibal Street, Commerce City, Colorado

91.     Defendant Hannibal Street is the residence of targets Drew JEFFREY and his wife, Christina McCARTHY.   During the search, law enforcement found several bags and large plastic storage bins of marijuana throughout the residence, that were heat sealed, packaged, and ready for resale. Additionally, duffle bags filled with processed and packaged marijuana were found in the bed of defendant Ford F-250, parked in front of defendant Hannibal Street.   In total, approximately 101.8 pounds of processed marijuana was seized from defendant Hannibal Street and defendant Ford F-250, with an approximate street value of $356,300 (at $3,500 per pound).   In addition, law enforcement seized ninety-six (96) dosage units of LSD, 67.12 grams of marijuana, 83.91 grams of marijuana hash, and 62.3 grams of MDMA from inside defendant Hannibal Street, and a plastic tub containing marijuana residue from Christina McCARTHY's vehicle.

92.     In addition to the drugs found in defendant Hannibal Street, officers found and seized defendant $10,315.00 in U.S. Currency, defendant $6,934.00 in U.S. Currency, defendant $4,130.00 in U.S. Currency, defendant $3,967.00 in U.S. Currency, defendant $1,091.00 in U.S. Currency, defendant Ford F-250, defendant Volvo, defendant Rolex Explorer Watch, and defendant Tag Heuer Watch.   Documents relating to various bank accounts held by Drew JEFFREY, Christina McCARTHY, BIG FOOT FINANCIAL, LLC and BIG FOOT MOTORSPORTS were also seized, along with property documents relating to defendant Mad River Road.

### Defendant 7361 Mad River Road, Mad River, California

93.     A review of documentation seized from defendant Hannibal Street and public records, indicates that defendant Mad River Road was purchased by Bigfoot Consulting, LLC (Drew JEFFREY's company) on May 18, 2010 for $140,000.00, and that JEFFREY put down $70,000 towards its purchase.   Records show the "Owner Address" as Drew JEFFREY's residence, defendant Hannibal Street.

94.     After JEFFREY was arrested and taken into custody, he communicated several times with his wife, Christina McCARTHY, utilizing an Adams County Jail telephone. During a monitored telephone call on January 26, 2012, McCARTHY told JEFFREY, "What I told that DEA guy cause I (inaudible) again he was trying to get California out of me, and I said no, I don't know anything about California. I said nothing. And he was trying to get, you know how many hundreds of pounds (marijuana) did you bring here, you know, through a week?"   It is believed that McCARTHY was attempting

to conceal their (JEFFREY's and McCARTHY's) California marijuana operation from law enforcement.

95.    On February 17, 2012, law enforcement agents conducted aerial reconnaissance of defendant Mad River Road.   Defendant Mad River Road is a remote, wooded parcel of land in northern California, with a residence and numerous outbuildings.   During the reconnaissance, an agent observed a large, coverless greenhouse, approximately twelve feet wide and sixty feet long.   It was located approximately100 yards from the residence, and connected to the residence via a well-established dirt road that displayed evidence of tire tracks.   Inside the greenhouse, the agent noted three rows of approximately fifteen square planters, totaling approximately forty five planters, each approximately three feet by three feet.   Using optics, the agent was able to observe a single stock of a plant remaining in the center of many of the planters.   Although no live marijuana plants were observed, it was the opinion of the agent that this greenhouse had recently been used to grow marijuana, and the plants had been harvested and cut at the base, leaving the stock in view.   Adjacent to the greenhouse was a similarly sized outside marijuana garden, which contained planters identical in size and description to the planters inside the greenhouse, including the single stock that was observable in many of the planters.   Based on the agent's experience as it relates to marijuana cultivation, he believes that the greenhouse and outside planters were used within the past year to grow marijuana.   Based on the size of planters and the spacing between them, coupled with the single stock in the center of the planters, it was

the agent's estimation that these planters were capable of cultivating marijuana that could easily produce over one pound of harvested marijuana per plant.

## B. Additional Seizures

96.     In addition to property seized from the above-described grow-houses, officers also seized a number of defendant assets from financial institutions and locations associated with members of the BUEHRER DTO which did not contain live marijuana plants.

## Drew Jeffrey

97.     The following additional property was seized in relation to Drew Jeffrey:

a.     Defendant $30,947.50 was seized on January 26, 2012 from E-Trade account number xxxxxx8410 in the name of Drew Jeffrey.

b.     Defendant $30,007.82 was seized on January 25, 2012, from US Bank account number xxxxxxxx1124 in the name of Drew Jeffrey.

c.     Defendant $25,629.65 was seized on January 26, 2012, from JP Morgan Chase Bank account number xxxxxxx6097 in the name of Drew Jeffrey.

d.     Defendant $19,680.12 was seized on January 26, 2012, from FirstBank account number xxxxxx1991 in the name of Drew Jeffrey.

e.     Defendant $16,019.66 was seized on January 26, 2012, from Core First Bank & Trust account number xxx7692 in the name of Drew Jeffrey.

f.     Defendant $10,572.89 was seized on January 25, 2012, from USBank account number xxxxxxxx0439 in the name of Drew Jeffrey;

g.      Defendant $6,200.50 was seized on January 26, 2012, from Edward Jones account number xxxx4700-1-0 in the name of Drew Jeffrey.

h.      Defendant $5,899.72 was seized on January 25, 2012, from USBank account number xxxxxxxx6172 in the name of Drew Jeffrey.

i.      Defendant $$5,666.93 was seized on January 25, 2012, from USBank account number xxxxxxxx0698 in the name of Drew Jeffrey.

j.      Defendant $2,937.27 was seized on January 26, 2012, from Bellco Credit Union account number xxxxx7138 in the name of Drew Jeffrey.

k.      Defendant $1,125.31 was seized on January 26, 2012, from Bellco Credit Union account number xxxxx7229 in the name of Drew Jeffrey.

l.      Defendant $15,232.74 was seized on January 27, 2012, from TCF National Bank account number xxxxxx6528 in the name of Bigfoot Consulting.

m.      Defendant $5,525.59 was seized on January 26, 2012, from Public Service Credit Union account number xxxxxx9267 in the name of Bigfoot Motorsports.

n.      Defendant Rolex Sub Mariner Watch was seized on January 26, 2012, from JP Morgan Chase Bank safe deposit box #6062-8 in the name of Drew Jeffrey.

### Jordan Buehrer

98.     During the search of a storage locker leased by Jordan BEUHRER and Brittlee BARNES, located at 12045 Moline Street, Unit 501, in Brighton, Colorado, officers seized defendant $2,994.00 in U.S. Currency, defendant 17 Silver Bars and 9 Silver

Coins, defendant Eight Miscellaneous Gold Coins and One Gold Bar, and defendant 50 One-Dollar Coins.

99.     The following bank accounts were also seized:

a.      Defendant $11,019.88 was seized on January 25, 2012, from Public Service Credit Union account number xxxxxx3027 in the name of Jordan Buehrer.

b.      Defendant $10,996.76 was seized on January 25, 2012, from JP Morgan Chase Bank account number xxxxx0604 in the name of JGB Enterprises.

c.      Defendant $5,610.15 was seized on January 25, 2012, from JP Morgan Chase Ban account number xxxxx2438 in the name of JGB Enterprises.

### Matthew McCally

100.    During the search of Matthew McCALLY and Brooke McCALLY's residence located at 8240 East 145th Place in Thornton, Colorado, officers seized 8.18 grams of processed marijuana, defendant $5,560.00 in U.S. Currency, defendant $760.00 in U.S. Currency, and defendant Six Silver Bars.

### Daniel Cichowski

101.    During the search of Daniel CICHOWSKI's residence, located at 2525 East 104th Avenue, #313, in Thornton, Colorado, officers seized defendant $1,988.00 in U.S. Currency.

### Joseph Smith

102.    During the search of Joseph SMITH's residence, located at 3920 Sharilane Street, in Strasburg, Colorado, officers seized defendant $7,910.00 in U.S. Currency. During a post-arrest interview with SMITH, he admitted to being involved in the

BUEHRER DTO, and that part of defendant $7,910.00 in U.S. Currency, which was seized from his residence, was proceeds of drug trafficking.

### Robert Gregg

103.    Defendant $6,500.00 seized on January 25, 2012, from USBank safe deposit box #1794-1 in the name of Robert Gregg.

### XIII. LEGAL INCOME INFORMATION

104.    Colorado Department of Labor records were obtained for targets of this investigation, which revealed the following:

a.    Drew JEFFREY had reported wages of $10,623.00 in 2006, $12,247.25 in 2007, and nothing since;

b.    Christina McCARTHY had a reported income of $1,954.80 in 2010, and $8,468.66 in 2011;

c.    Jordan BUEHRER had no reported wages for the last six years;

d.    Britlee BARNES had no reported wages for the last six years;

e.    Matthew ALDERMAN had no reported wages for the last six years;

f.    Matthew MCCALLY had a reported income of $47,326.93 in 2006; $50,173.89 in 2007; $52,219.53 in 2008, $19,743.68 in 2009, $31,554.24 in 2010, and nothing since;

g.    Daniel Cichowski had a reported income of $6,300.49 in 2006, $26,884.23 in 2007, $10,431.39 in 2009, and $38,470.28 in 2011; he had no wages reported for 2008 or 2010;

      h.     Joseph SMITH had a reported income of $450 for 2007, $147.50 in 2009, and $1,051.75 in 2011; he had no wages reported for 2006, 2008, or 2010;

      i.     Robert GREGG had a reported income of $4,152.58 in 2009, $13,500 in 2010, and $5,805 in 2011; and

      j.     Michael ALBERT had no reported wages for the last six years.

105.    A review of the State of New Jersey Department of Records reveal that Eric GLEASON had no reported wages on file.

## XIV. CRIMINAL CHARGES

106.    Based in part on the facts contained herein, a Colorado State Grand Jury returned a 130–count indictment against twenty-two (22) individuals, including, but not limited to, Jordan BUEHRER, Brittlee BARNES, Drew JEFFREY, Robert GREGG, Christina McCARTHY, Matthew McCALLY, Brooke McCALLY, Matthew ALDERMAN, Joseph SMITH, Michael ALBERT, Daniel CICHOWSKI, Eric GLEASON, Philip LOBO, (Adams County, Colorado Criminal Case No. 12CR219).   This case remains pending at this time.

## XV. CONCLUSION

107.    Based upon the facts and circumstances described above, the evidence shows that Jordan BUEHRER, Brittlee BARNES, Drew JEFFREY, Christina McCARTHY, Robert GREGG, Matthew McCALLY, Brooke McCALLY, Matthew ALDERMAN, Joseph SMITH, Michael ALBERT, Daniel CICHOWSKI, Eric GLEASON, Philip LOBO, and others named herein, were all involved in the illegal marijuana business, and that these

individuals do not have enough legal income to support ownership of the defendant property.

## VERIFICATION OF KENNETH VALDEZ, SPECIAL AGENT
## INTERNAL REVENUE SERVICE, CRIMINAL INVESTIGATION DIVISION

I, Special Agent Kenneth Valdez, hereby state and aver that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein is true.

s/ *Kenneth Valdez*
Kenneth Valdez, Special Agent
Internal Revenue Service -
Criminal Investigation Division

STATE OF COLORADO        )
CITY AND                 )ss.
COUNTY OF DENVER         )

The foregoing VERIFIED COMPLAINT FOR FORFEITURE IN REM was subscribed before me this 31st day of May, 2012, by Kenneth Valdez, Internal Revenue Service, Criminal Investigation Division.

s/ *Nicole C. Davidson*
Notary Public, State of Colorado

My Commission Expires: June 15, 2014

## FIRST CLAIM FOR RELIEF

108.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

109.    By the foregoing and other acts, defendant Hannibal Street constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. §

45

801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

110.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

111.   By the foregoing and other acts, defendant Hannibal Street constitutes real property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of violations of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(7).

## THIRD CLAIM FOR RELIEF

112.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

113.   By the foregoing and other acts, defendant Mad River Road constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FOURTH CLAIM FOR RELIEF

114.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

115.   By the foregoing and other acts, defendant Mad River Road constitutes real property used, or intended to be used, in any manner or part, to commit or to facilitate the

commission of violations of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(7).

## FIFTH CLAIM FOR RELIEF

116.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

117.   By the foregoing and other acts, defendant Ford F-250 constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, and concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(4).

## SIXTH CLAIM FOR RELIEF

118.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

119.   By the foregoing and other acts, defendant Volvo constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, and concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(4).

## SEVENTH CLAIM FOR RELIEF

120.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

121.    By the foregoing and other acts, defendant Volvo constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## EIGHTH CLAIM FOR RELIEF

122.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

123.    By the foregoing and other acts, defendant $10,315.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## NINTH CLAIM FOR RELIEF

124.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

125.    By the foregoing and other acts, defendant $6,934.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TENTH CLAIM FOR RELIEF

126.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

127.    By the foregoing and other acts, defendant $4,130.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of

21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## ELEVENTH CLAIM FOR RELIEF

128.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

129.   By the foregoing and other acts, defendant $3,967.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWELFTH CLAIM FOR RELIEF

130.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

131.   By the foregoing and other acts, defendant $1,091.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTEENTH CLAIM FOR RELIEF

132.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

133.   By the foregoing and other acts, defendant $30,947.50 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. §

801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FOURTEENTH CLAIM FOR RELIEF

134.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

135.    By the foregoing and other acts, defendant $30,007.82 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FIFTEENTH CLAIM FOR RELIEF

136.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

137.    By the foregoing and other acts, defendant $25,629.65 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SIXTEENTH CLAIM FOR RELIEF

138.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

139.    By the foregoing and other acts, defendant $19,680.12 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. §

801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SEVENTEENTH CLAIM FOR RELIEF

140.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

141.   By the foregoing and other acts, defendant $16,019.66 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## EIGHTEENTH CLAIM FOR RELIEF

142.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

143.   By the foregoing and other acts, defendant $10,572.89 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## NINETEENTH CLAIM FOR RELIEF

144.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

145.   By the foregoing and other acts, defendant $6,200.50 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTIETH CLAIM FOR RELIEF

146.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

147.    By the foregoing and other acts, defendant $5,899.72 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-FIRST CLAIM FOR RELIEF

148.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

149.    By the foregoing and other acts, defendant $5,666.93 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-SECOND CLAIM FOR RELIEF

150.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

151.    By the foregoing and other acts, defendant $2,937.27 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-THIRD CLAIM FOR RELIEF

152.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

153.    By the foregoing and other acts, defendant $1,125.31 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-SECOND CLAIM FOR RELIEF

154.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

155.    By the foregoing and other acts, defendant $15,232.74 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-THIRD CLAIM FOR RELIEF

156.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

157.    By the foregoing and other acts, defendant $5,525.59 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-FOURTH CLAIM FOR RELIEF

158.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

159.    By the foregoing and other acts, defendant Rolex Explorer Watch constitutes property traceable to an exchanged of controlled substances in violation of 21

U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-FIFTH CLAIM FOR RELIEF

160.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

161.   By the foregoing and other acts, defendant Tag Heuer Watch constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-SIXTH CLAIM FOR RELIEF

162.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

163.   By the foregoing and other acts, defendant Rolex Sub Mariner Watch constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-SEVENTH CLAIM FOR RELIEF

164.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

165.   By the foregoing and other acts, defendant $6,195.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of

21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-EIGHTH CLAIM FOR RELIEF

166.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

167.   By the foregoing and other acts, defendant $2,068.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-NINTH CLAIM FOR RELIEF

168.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

169.   By the foregoing and other acts, defendant $450.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTIETH CLAIM FOR RELIEF

170.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

171.   By the foregoing and other acts, defendant LG Plasma TV constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. §

801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### THIRTY-FIRST CLAIM FOR RELIEF

172.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

173.    By the foregoing and other acts, defendant $2,994.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### THIRTY-SECOND CLAIM FOR RELIEF

174.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

175.    By the foregoing and other acts, defendant 17 Silver Bars & 9 Silver Coins constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### THIRTY-THIRD CLAIM FOR RELIEF

176.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

177.    By the foregoing and other acts, defendant Eight Miscellaneous Gold Coins and One Gold Bar constitutes property traceable to an exchanged of controlled

substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTY-FOURTH CLAIM FOR RELIEF

178.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

179.    By the foregoing and other acts, defendant 50 One-Dollar Coins constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTY-FIFTH CLAIM FOR RELIEF

180.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

181.    By the foregoing and other acts, defendant $11,019.88 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTY-SIXTH CLAIM FOR RELIEF

182.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

183.    By the foregoing and other acts, defendant $10,996.76 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. §

801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTY-SEVENTH CLAIM FOR RELIEF

184.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

185.    By the foregoing and other acts, defendant $5,610.15 constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTY-EIGTH CLAIM FOR RELIEF

186.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

187.    By the foregoing and other acts, defendant $2,280.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRTY-NINTH CLAIM FOR RELIEF

188.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

189.    By the foregoing and other acts, defendant Gold & Diamond Bracelet constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTIETH CLAIM FOR RELIEF

190.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

191.   By the foregoing and other acts, defendant Toyota Tundra constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, and concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(4).

## FORTY-FIRST CLAIM FOR RELIEF

192.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

193.   By the foregoing and other acts, defendant Toyota Tundra constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTY-SECOND CLAIM FOR RELIEF

194.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

195.   By the foregoing and other acts, defendant $5,560.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTY-THIRD CLAIM FOR RELIEF

196.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

197.    By the foregoing and other acts, defendant $760.00 in U.S. Currency constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FOURTY-FOURTH CLAIM FOR RELIEF

198.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

199.    By the foregoing and other acts, defendant Six Silver Bars constitutes property traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTY-FIFTH CLAIM FOR RELIEF

200.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

201.    By the foregoing and other acts, defendant $1,988.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTY-SIXTH CLAIM FOR RELIEF

202.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

203.    By the foregoing and other acts, defendant $7,910.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTY-SEVENTH CLAIM FOR RELIEF

204.    The Plaintiff repeats and incorporates by reference each of the paragraphs above.

205.    By the foregoing and other acts, defendant $6,500.00 in U.S. Currency constitutes proceeds traceable to an exchanged of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 1st day of June, 2012.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

By: s/ *Tonya S. Andrews*
    Tonya S. Andrews
    Assistant United States Attorney
    1225 17th Street, Suite 700
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    E-mail: tonya.andrews@usdoj.gov
    *Attorney for Plaintiff*