IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01433-REB-MJW

UNITED STATES OF AMERICA,

        Plaintiff,

v.

11843 HANNIBAL STREET, COMMERCE CITY, CO;
7361 MAD RIVER ROAD, MAD RIVER, CA;
2001 FORD F-250 XL, VIN #1FTNW21F01EA67656;
2000 VOLVO S80-16, VIN #YV1TS90DXY1094497;
$10,315.00 IN UNITED STATES CURRENCY;
$6,934.00 IN UNITED STATES CURRENCY;
$4,130.00 IN UNITED STATES CURRENCY;
$3,967.00 IN UNITED STATES CURRENCY;
$1,091.00 IN UNITED STATES CURRENCY;
$30,947.50 SEIZED FROM E-TRADE ACCT. XXXXXX8410;
$30,007.82 SEIZED FROM US BANK ACCT. XXXXXXXX1124;
$25,629.65 SEIZED FROM JP MORGAN CHASE BANK ACCT. XXXXXXX6097;
$19,680.12 SEIZED FROM FIRST BANK ACCT XXXXXX1991;
$16,019.66 SEIZED FROM CORE FIRST BANK & TRUST XXX7692;
$10,572.89 SEIZED FROM US BANK ACCT XXXXXXXX0439;
$6,200.50 SEIZED FROM EDWARD JONES ACCT XXXX4700-1-0;
$5,899.72 SEIZED FROM US BANK ACCT XXXXXXXX6172;
$5,666.93 SEIZED FROM US BANK ACCT XXXXXXXX0698;
$2,937.27 SEIZED FROM BELLCO CREDIT UNION ACCT XXXXX7138;
$1,125.31 SEIZED FROM BELLCO CREDIT UNION ACCT XXXXX7229;
$15,232.74 SEIZED FROM TCF NATIONAL BANK ACCT XXXXXX6528;
$5,525.59 SEIZED FROM PUBLIC SERVICE CREDIT UNION ACCT XXXXXX9267;
ROLEX EXPLORER II WATCH;
TAG HEUER AQUARACER LADIES WATCH;
ROLEX SUB MARINER WATCH SEIZED FROM CHASE SAFE DEPOSIT BOX 6062-8;
$6,195.00 IN UNITED STATES CURRENCY;
$2,068.00 IN UNITED STATES CURRENCY;
$450.00 IN UNITED STATES CURRENCY;
LG 60" PLASMA TELEVISION, SERIAL #907RMAQ153088;
$2,994.00 IN UNITED STATES CURRENCY;
SEVENTEEN SILVER BARS AND NINE SILVER COINS;
EIGHT MISCELLANEOUS GOLD COINS AND ONE GOLD BAR;
FIFTY ONE-DOLLAR COINS;

1

$11,019.88 SEIZED FROM PUBLIC SERVICE CREDIT UNION ACCT XXXXXX3027;
$10,996.76 SEIZED FROM JP MORGAN CHASE BANK ACCT XXXXX0604;
$5,610.15 SEIZED FROM JP MORGAN CHASE BANK ACCT XXXXX2438;
$2,280.00 IN UNITED STATES CURRENCY;
GOLD AND DIAMOND BRACELET;
2007 TOYOTA TUNDRA SR5, VIN #5TFBV54137X024482;
$5,560.00 IN UNITED STATES CURRENCY;
$760.00 IN UNITED STATES CURRENCY;
SIX SILVER BARS;
$1,988.00 IN UNITED STATES CURRENCY;
$7,910.00 IN UNITED STATES CURRENCY; and
$6,500.00 SEIZED FROM US BANK SAFE DEPOSIT BOX 1794-1;

       Defendants.

---

### UNITED STATES' MOTION TO STRIKE CLAIMANT GLEASON'S SECOND AND THIRD DEFENSES

---

The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Tonya S. Andrews, respectfully moves this Court to Strike claimant Joanne S. Gleason's Second and Third Defenses pursuant to Fed. R. Civ. P. 12(f). In support thereof, the United States submits the following:

### I.    RELEVANT FACTS

1.    On June 1, 2012, the Government filed its Verified Complaint for Forfeiture *In Rem*. (Doc. 1).

2.    A Notice of Complaint for Forfeiture was sent to claimant Joanne S. Gleason ("claimant Gleason") on June 5, 2012. (Docs. 13, 15).

3.    On July 16, 2012, claimant Gleason filed her Notice of Claim pursuant to Supplemental Rule G(5). (Doc. 21).

4.      Claimant Gleason then filed Claimant's Answer to Plaintiff's Complaint for Forfeiture *In Rem* on July 30, 2012.  (Doc. 35).   In her Answer, claimant Gleason asserted six affirmative defenses.

## II.     ARGUMENT

Claimant Gleason's Second and Third Defenses should be struck pursuant to Federal Rule of Civil Procedure 12(f) for the following reasons:

(1)     Claimant Gleason's Second Defense is legally insufficient because the Controlled Substances Act ("CSA") is not a medical treatment and there is no fundamental right to obtain narcotics; and

(2)     Claimant Gleason's First Amendment defense is irrelevant to the conduct alleged, the consumption of marijuana is not information, and the First Amendment does not protect criminal conduct in violation of a valid statute.

Federal Rule of Civil Procedure 12(f) states "[t]he court may strike from a pleading an insufficient defense . . . ."   Striking a defense is a "severe remedy," but the purpose is to promote efficiency and avoid "litigating issues that will not affect the outcome of the case." *McPherson v. Bachus & Schanker*, No. 10-cv-01768-CMA-KMT, 2011 WL 2415003, at *2 (D. Colo. June 10, 2011) (citations omitted).  A defense is insufficient if it cannot succeed under any "set of circumstances." *S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006).  Indeed, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citing 5A A. Charles Alan Wright & Arthur R. Miller*, Federal Practice & Procedure* § 1381, 665 (2d ed.1990)).

Here, two of claimant Gleason's defenses meet such criteria and should be stricken as legally insufficient.

### A.   Second Defense is Legally Insufficient

#### 1.   Claimant Gleason's Second Defense is Insufficient Because the CSA is Not a Medical Treatment

First, claimant Gleason's affirmative defense is insufficient because under no set of circumstances are the forfeiture provisions of the CSA a "medical treatment," which violate claimant Gleason's own fundamental right to refuse unwanted medical treatment.  The CSA is a valid exercise of Congress' commerce power through the necessary and proper clause.  *See Gonzales v. Raich*, 545 U.S. 1, 9 (2005).  The CSA makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense" any controlled substance, "[e]xcept as authorized by [21 U.S.C. §§ 801-904]."    21 U.S.C. §§ 841(a)(1).  Here, the alleged underlying conduct giving rise to forfeiture of defendant Toyota Tundra is Eric Gleason's distribution of both marijuana and marijuana proceeds in and out of the State of Colorado.  (Doc. 1 ¶¶ 71-73).

The purpose for enacting the CSA was to "conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Gonzales*, 545 U.S. at 12.  As stated in the House Report No. 91-1444, Title II of the CSA "provides for the control by the justice department of problems related to drug abuse through registration of manufacturers, wholesalers, retailers, and all others in the legitimate distribution chain, and makes transactions outside the legitimate distribution chain illegal."  H.R. Rep. No. 91-1444, at 1970 U.S.C.C.A.N. 4566, 4569.  Clearly, "[t]he purpose of the

4

Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., was 'to strengthen existing law enforcement authority in the field of drug abuse.'" *United States v. Kuck*, 573 F.2d 25, 28 (10th Cir. 1978) (*citing United States v. Steinberg*, 525 F.2d 1126, 1133 (2nd Cir. 1975)). The law enforcement authority in the CSA, as it relates to this case, is clearly punitive, not therapeutic.

Further, the definition of medical treatment is "the management and care of a patient for the purpose of combating disease or disorder." Dorland's Illustrated Medical Dictionary (32nd Ed. 2012). A "patient" is a "person who is ill or who is undergoing treatment for disease." *Id.* The very definition of medical treatment eliminates claimant Gleason's defense stating that the CSA is "treating" her. There is no "management and care" of claimant Gleason because that would require some active participation by the government. In fact, the Verified Complaint does not mention claimant Gleason at all, except in relation to her title ownership of defendant 2007 Toyota Tundra SR5. The CSA merely regulates how certain drugs are obtained and which drugs cannot be legally obtained. Further, although the CSA's purpose was to "conquer drug abuse," the means to achieve their goal in Title II was criminalization of transactions which occur outside the permitted distribution chain. Clearly, there is no CSA statute which actually prescribes medical treatment in this civil forfeiture case, nor does the claimant cite to one.

Further, claimant Gleason's reliance on *Cruzan* is misplaced. *See Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990). Although claimant Gleason is correct that a fundamental right to refuse medical treatment exists, that individual right

requires that medical treatment actually be offered. The CSA does not statutorily authorize any "treatment" as it relates to the alleged conduct in this case, the illegal possession and distribution of a Schedule 1 controlled substance. Moreover, common sense dictates that deterrence of illicit drug use, through a regulatory scheme of the substances themselves, does not involve any invasion of a person's individual bodily autonomy.

### 2. There is No Fundamental Right to Access Narcotics

Claimant Gleason's Second Defense also fails to "narrowly and accurately reflect the right that she seeks to vindicate." [1] *Raich v. Gonzales*, 500 F.3d 850, 864 (9th Cir. 2007). The United States Supreme Court has stated that any analysis of an asserted fundamental right begins with a "careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). Claimant Gleason's affirmative defense, if correctly articulated, is a fundamental right to freely access narcotics, because any regulation of the distribution chain is a forced medical treatment upon her. There is no authority for such a right. Clearly, "the mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it." *Id.* at 303.

---

[1] Claimant Gleason's stated liberty interest is also factually unfounded. The United States Supreme Court has recognized "a liberty interest in bodily integrity in only very limited circumstances involving such things as abortions, . . . end-of-life decisions, . . . birth control decisions, . . . and instances where individuals are subject to dangerous or invasive procedures where their personal liberty is being restrained." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citations omitted). Claimant Gleason's Second Defense does not allege any of these enumerated liberty interests.

6

**B.      Claimant's Third Defense that the CSA violates the First Amendment Right to Receive Information and Ideas is Without a Basis in Law or Fact**

**1.      Claimants' First Amendment Defense is Irrelevant to the Claims Set Forth in the Government's Complaint**

Claimant Gleason's Third Defense should be struck because the relevant conduct set forth in the Verified Complaint is not personal use of marijuana. The Complaint alleges that defendant Toyota Tundra is property traceable to the exchange of controlled substances or was used to facilitate the transportation of controlled substances. (Doc. 1 ¶¶ 190-193); 21 U.S.C. §§ 881(a)(4), (a)(6). Specifically, the Verified Complaint states that Eric Gleason was a marijuana customer who distributed marijuana in the States of Colorado and New Jersey. (Doc. 1 ¶ 71). It is further alleged that Eric Gleason arranged with Jordan Buehrer to pick up nine pounds of marijuana and was involved in sending and receiving drug proceeds utilizing the mail. (Doc. 1 ¶¶ 71-72).

There are no allegations that Eric Gleason's mother, claimant Gleason, was using marijuana such that the "impart[ing] [of] chemical information upon individuals" would be relevant. (Doc. 35 ¶ 111). Thus, whatever privilege to consume controlled substances the First Amendment may arguably protect, it is entirely irrelevant to the allegations in this case.[2]

---

[2] To the extent the claimant Gleason's argument is based on medical marijuana customers having a First Amendment right to receive "chemical information," the law is clear that individuals may not assert the rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (absent very limited circumstances, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

### 2. The Consumption of Marijuana is Not Information Protected by the First Amendment

Furthermore, claimant Gleason's First Amendment defense stating that "[p]sychoactive substances" impart "information" is wholly without merit. (Doc. 35 ¶ 111). In no way can tetrahydrocannabinol, the psychoactive chemical in marijuana, be deemed any form of recognized speech such that claimants have a First Amendment right to receive its "information."

It is undisputed that the First Amendment protects the right to receive information as a necessary corollary to the right to free speech. *See Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986) (finding that "[t]he constitutional guarantee of free speech 'serves significant societal interests' wholly apart from the speaker's interest in self-expression . . . By protecting those who wish to enter the marketplace of ideas . . ., the First Amendment protects the public's interest in receiving information"); *Board of Education v. Pico*, 457 U.S. 853, 867 (1982). However, as obvious as it sounds, for information to be received by an individual there must be some other individual communicating that information. Indeed, the oft-quoted "marketplace of ideas" in First Amendment discussion embodies the concept that there must be sellers of "speech" in order for there to be "buyers" of information and ideas.[3] *See Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting); *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring).

---

[3] The concept of the "marketplace of ideas" is that, like economic competition in a free market, the freedom of speech must necessarily include a competition of competing ideas in which listeners are free to choose which ideas hold truth and merit.

There is no "speaker" or sender of ideas in the use of controlled substances. The "chemical information" received by the user of marijuana is simply that -- "chemicals." Any mind-altering affects those chemicals may have on an individual is secondary and remain solely the thoughts of the drug-user. There simply is no communication of speech, information, or ideas that implicates protection under the First Amendment by the consumption of a controlled substance in this case.

### 3. The First Amendment Does Not Protect Criminal Conduct

The First Amendment is also not a shield which protects conduct that is clearly a violation of a valid criminal statute. Indeed, the First Amendment does not protect the right to free speech when it is used "as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."); *Pearson v. McCaffrey*, 139 F. Supp. 2d 113, 121 (D.D.C. 2001). Clearly, the possession of a controlled substance, inherently an integral part of conduct in violation of 21 U.S.C. § 801 et seq., even if for the purposes of consuming "chemical information," is not protected by the First Amendment. *See Paris Adult Theatre I et al. v. Slaton*, 413 U.S. 49, 67-68 (1973) ("The fantasies of a drug addict are his own and beyond the reach of government, but government regulation of drug sales is not prohibited by the Constitution."). Moreover, "no Court has recognized a fundamental right to sell, distribute, or use marijuana." *Pearson*, 139 F. Supp. 2d at 123.

### III.   CONCLUSION

In sum, for the reasons stated herein, claimant Gleason's Second and Third Defenses should be struck pursuant to Federal Rule of Civil Procedure 12(f).

DATED this 15th day of August, 2012.

        Respectfully submitted,

        JOHN F. WALSH
        United States Attorney

By:   s/ *Tonya S. Andrews*
        Tonya S. Andrews
        Assistant United States Attorney
        1225 17th Street, Suite 700
        Denver, Colorado 80202
        Telephone: (303) 454-0100
        E-mail: tonya.andrews@usdoj.gov
        *Attorney for Plaintiff*

### **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of August, 2012, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notice to the following participant:

Travis Benjamin Simpson
*Attorney for Claimant Joanne S. Gleason*

        s/ *Raisa Vilensky*
        FSA Data Analyst
        Office of the U.S. Attorney